1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CINDY R G.,

                      Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. C23-5971 RSM

**ORDER AFFIRMING AND
DISMISSING THE CASE**

13

14

15

16

     Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits (DIB).  Plaintiff contends the ALJ erred at step two and by rejecting her symptom testimony.  Dkt. 9.  As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

17

                             **BACKGROUND**

18

19

20

21

22

23

     Plaintiff is 56 years old and has worked as a home attendant.  Admin. Record (AR) 29, 104.  In May 2019, Plaintiff applied for benefits, alleging disability as of March 15, 2015.  AR 104, 117–18, 128, 139.  Plaintiff's applications were denied initially and on reconsideration.  AR 113, 124, 137, 148.  The ALJ conducted a hearing, where Plaintiff amended her alleged onset date to May 29, 2019, and withdrew her DIB application (AR 74), and issued a decision in February 2021 finding Plaintiff not disabled.  AR 69–103, 149–167.  The ALJ's decision was

ORDER AFFIRMING AND DISMISSING
THE CASE - 1

remanded by the Appeals Council.  AR 168–72.  On remand, the ALJ held another hearing in February 2023 (AR 36–68) and issued another decision in March 2023 finding Plaintiff not disabled.  AR 8–35.  Plaintiff now seeks review of the ALJ's March 2023 decision.

## DISCUSSION

The Court may reverse the ALJ's decision only if it is legally erroneous or not supported by substantial evidence of record.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  The Court must examine the record but cannot reweigh the evidence or substitute its judgment for the ALJ's.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When evidence is susceptible to more than one interpretation, the Court must uphold the ALJ's interpretation if rational.  *Ford*, 950 F.3d at 1154.  Also, the Court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### 1.    Step Two

Plaintiff contends the ALJ erred by declining to find her depression as "severe" at step two.  Dkt. 9 at 2–3.

At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments.  *Smolen v. Chater*, 80 F.3d 1273, 1289–90 (9th Cir. 1996).  It is the claimant who bears the burden of showing his or her impairment is severe.  *See Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).  An impairment or combination of impairments can be found "not severe" if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  *Smolen*, 80 F.3d at 1290.  Absence of objective medical evidence of a severe impairment may justify an adverse step two determination.  *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005).

Here, the ALJ declined to find any severe mental impairments because Plaintiff's

symptoms do not impose more than mild limitations in the "paragraph B" functional areas of: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR 16–18. The ALJ's assessment is supported by substantial evidence. The records the ALJ cited to include a medical opinion stating Plaintiff would have no difficulties with work functionalities, including performing simple and repetitive tasks, performing activities on a consistent basis, maintaining regular attendance, and dealing with workplace stress. AR 473–74. The opinion was also based on a mental status examination showing Plaintiff had normal content of thought, normal memory, and ability to follow instructions. *See* AR 472–73. The ALJ also noted Plaintiff was able to engage in several activities, including driving and taking care of her partner, implying Plaintiff has the ability to make decisions and concentrate. AR 16–17. While the record does show Plaintiff reported not wanting to be around others, the ALJ pointed out this was due to Plaintiff being cautious with COVID-19. AR 659. The record shows Plaintiff was cooperative and had supportive friends with whom she spent time daily. AR 472, 492. The record also shows Plaintiff often had a groomed and appropriate appearance. AR 473, 478, 496. The ALJ acknowledged Plaintiff attended therapy, but noted Plaintiff did so to address her external stressors, implying her need for therapy was not necessarily linked to a mental health condition. AR 18. Plaintiff argues her depression was unrelated to those stressors—rather, she states the stressors worsened her depression. Dkt. 9 at 2. Plaintiff's argument is unpersuasive as the record shows she presented to therapy to directly address those stressors. *See, e.g.*, AR 491 ("Cindy is coming into services voluntarily to work on dealing with daily life stress."), 553 ("Cindy will continue to make progress in counseling…and find resolution for family stress."), 554 (Plaintiff expressing her concern about current events), 560 (Plaintiff identifying family-

related issues), 579 (same), 583 (Plaintiff expressing concern about current events), 661

(Plaintiff reporting depressed mood and explaining struggle with daughter's situation), 670

(Plaintiff reporting depressed mood due to death of a friend).  Moreover, even if Plaintiff's

depression was unrelated to her situation stressors, Plaintiff's citations do not substantially show

her condition would have warranted more than mild "paragraph B" limitations.  The Court also

notes the record includes several treatment notes where Plaintiff denied anxiety and panic

attacks, and several mental examinations showing normal psychiatric findings.  *See* AR 586,

613–614, 658.  Plaintiff has not met her burden of showing her depression has "more than

minimal effect on [her] ability to work."  *Smolen*, 80 F.3d at 1290.  Therefore, in finding

Plaintiff's depression not "severe" at step two, the ALJ did not err.

Plaintiff also argues the ALJ failed to consider her depression in assessing her residual

functional capacity.  Dkt. 9 at 3.  The ALJ's evaluation at step two and assessment of a

claimant's RFC are two separate aspects of the disability evaluation process.  The step two

inquiry "is not meant to identify the impairments that should be taken into account when

determining the RFC."  *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (citing *Bowen

v. Yuckert*, 482 U.S. 137, 146–47 (1987)).  At the RFC phase, the ALJ must consider the

claimant's limitations from all impairments, including those that are not severe.  *Id.* at 1049.  A

claimant cannot be prejudiced by failure to consider a particular impairment severe at step two as

long as the ALJ finds the claimant has at least one severe impairment, and still addresses the

non-severe impairment when considering the claimant's RFC.  *Id.* (citing *Molina*, 674 at 1115).

The ALJ also has no obligation to include in a claimant's RFC limitations that are not supported

by the record.  *See Stubbs-Danielson*, 539 F.3d at 1174 (9th Cir. 2008); *Osenbrock v. Apfel*, 240

F.3d 1157, 1164–65 (9th Cir. 2001).

ORDER AFFIRMING AND DISMISSING
THE CASE - 4

1    In this case, though the ALJ found Plaintiff's depression not severe, the ALJ still

2    considered Plaintiff's mental health in assessing her RFC.  *See* AR 22–27.  Plaintiff summarily

3    states the ALJ failed to consider her depression but does not meaningfully challenge how the

4    ALJ considered her mental health at the RFC stage.  *See* Dkt. 9 at 3.  Therefore, the Court does

5    not address it and rejects Plaintiff's argument.  *See Carmickle v. Commissioner, Social Sec.*

6    *Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (quoting *Paladin Assocs., Inc. v. Mont. Power*

7    *Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

8        **2.    Plaintiff's Symptom Testimony**

9        Plaintiff contends the ALJ erred in rejecting her symptom testimony regarding her left

10   middle finger.[1]  Dkt. 9 at 3–4.

11       Plaintiff testified she finds daily activities painful because of her deformed left middle

12   finger and often does things one-handed to avoid using her injured hard.  AR 50–52, 56.  She

13   stated the pain fluctuates, and when engaged in an activity, she sometimes has to take breaks and

14   cannot do anything.  AR 52.

15       Where, as here, an ALJ determines a claimant has presented objective medical evidence

16   establishing underlying impairments that could cause the symptoms alleged, and there is no

17   affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to

18   symptom severity by providing "specific, clear, and convincing" reasons supported by

19   substantial evidence.  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  "The standard

20   isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that

21

22   _____

[1] Plaintiff also testified to other symptoms but challenges only the ALJ's evaluation of her left middle finger.  Dkt. 9.  The Court will not consider matters that are not "'specifically and distinctly'" argued in the plaintiff's opening brief.  *Carmickle*, 533 F.3d at 1161 n. 2. Therefore, the Court will only consider the ALJ's evaluation of this portion of Plaintiff's testimony.

23

ORDER AFFIRMING AND DISMISSING
THE CASE - 5

it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ acknowledged Plaintiff had suffered a finger injury in January 2020 and underwent surgery in May 2020, and noted both Plaintiff and her doctor agreed to a second surgery.  AR 24 (citing AR 586, 597–98, 614–15, 622–23).  The ALJ also noted, however, that Plaintiff did not proceed with the second surgery and thus rejected Plaintiff's testimony.  AR 24–25.  Plaintiff argues requiring a claimant undergo a surgery is an "abuse of the role" of the ALJ and the agency because she "need not 'prove' the legitimacy of her pain by submitting to such treatment methods."  Dkt. 9 at 4.  However, when a claimant "fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  "In the case of a complaint of pain, such failure may be probative of credibility, because a person's normal reaction is to seek relief from pain…."  *Id*.  Though if a claimant "provides evidence of a good reason" for not seeking treatment, the ALJ may not reject her testimony.  *See Smolen*, 80 F.3d at 1284.  Here, as the ALJ noted, the records do not show, and Plaintiff does not direct the Court to any, evidence of a "good reason" as to why she did not proceed with a second surgery.  Instead, the record shows Plaintiff did not seek out treatment after her first surgery until almost a year later and did so by asking for medication.  *See* AR 653. That Plaintiff proceeded with medication instead of surgery further supports the ALJ's rejection as an ALJ may discount the claimant's testimony when the "level or frequency of treatment is inconsistent with the level of complaints."  *See Molina*, 674 F.3d at 1113 (quotations omitted).

The ALJ also rejected Plaintiff's testimony because it was inconsistent with medical evidence.  AR 24.  "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle*, 533 F.3d at 1161 (citing *Johnson v. Shalala*, 60

F.3d 1428, 1434 (9th Cir.1995)).  Here, the ALJ reasonably found Plaintiff's statements

regarding her pain not as severe as alleged based on her physician's assessments.  AR 24–25.

For example, Plaintiff's physician opined Plaintiff could use her left hand and arm occasionally

for reaching, holding, handling, and manipulating.  AR 484.  This is reflected in the ALJ's RFC

determination.  AR 21.

Finally, the ALJ rejected Plaintiff's testimony based on her activities of daily living.  AR

26.  An ALJ may discount a claimant's symptom testimony when it is inconsistent with the

claimant's general activity level.  *See Molina*, 674 F.3d at 1112–13; *Lingenfelter v. Astrue*, 504

F.3d 1028, 1040 (9th Cir. 2007).  The record shows Plaintiff painted, refinished furniture, and

gardened before her injury.  AR 472, 478.  While the record shows Plaintiff's finger was "in the

way of many of her activities" following her surgery, it also shows Plaintiff continued to paint

furniture and partake in other craft activities, as well as independently perform household shores,

including preparing meals on the stove or in the oven, grocery shopping, and laundry.  AR 557,

561, 565, 577.  Plaintiff argues she testified to only being able to perform activities one handed

therefore the ALJ's finding does not detract from her allegations.  Dkt. 9 at 4.  However, "[e]ven

if the claimant experiences some difficulty or pain, [her] daily activities 'may be grounds for

discrediting the claimant's testimony to the extent that they contradict claims of a totally

debilitating impairment."  *See Smartt*, 53 F.4th at 499 (quotations omitted).  That Plaintiff was

able to engage in the activities listed by the ALJ undercuts her testimony about how limited she

is by her finger injury.  Therefore, in rejecting Plaintiff's testimony based on her activity level,

the ALJ did not err.

In sum, because the ALJ provided at least one valid reason, supported by substantial

evidence, to reject Plaintiff's testimony, the ALJ did not err.

1

**CONCLUSION**

2          For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this

3    case is **DISMISSED** with prejudice.

4          DATED this 18th day of March, 2024.

5

6

7    RICARDO S. MARTINEZ
     UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER AFFIRMING AND DISMISSING
THE CASE - 8